UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| TED LUCIANI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NET POWER INC., DANIEL J. RICE IV, AKASH PATEL, and BRIAN ALLEN, <br><br> Defendants. | Case No. 1:25-cv-00296-WO-JLW |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DAVID A. WENN AND TED LUCIANI FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF COUNSEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................1

STATEMENT OF FACTS ...........................................3

QUESTIONS PRESENTED ..........................................8

ARGUMENT .....................................................8

    I.    WENN AND LUCIANI SHOULD BE APPOINTED
        CO-LEAD PLAINTIFFS ................................8

        A.    Wenn and Luciani Are Willing to Serve
              as Class Representatives and Have
              Timely Filed This Motion to Be Appointed
              Co-Lead Plaintiffs. .........................10

        B.    Wenn and Luciani Have the "Largest
              Financial Interest" in the Action. .........11

        C.    Wenn and Luciani Otherwise Satisfy
              the Requirements of Rule 23. ...............13

        D.    Wenn and Luciani Will Fairly and
              Adequately Represent the Interests
              of the Class and Are Not Subject to
              Unique Defenses. ...........................19

    II.  CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL
        SHOULD BE APPROVED ...............................20

CONCLUSION ..................................................23

CERTIFICATE OF WORD COUNT ...................................25

CERTIFICATE OF SERVICE ......................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnet v. Elan Corp., PLC*,
  236 F.R.D. 158 (S.D.N.Y. 2005) ...........................17

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
  141 F.R.D. 229 (S.D.N.Y. 1992) ...........................15

*Chamblee v. Terraform Power, Inc.*,
  No. CV PX 16-981, 2016 WL 4039178
  (D. Md. July 28, 2016) ...................................14

*Hirtenstein v. Cempra, Inc.*,
  No. 1:16CV1303, 2017 WL 2874588
  (M.D.N.C. July 5, 2017) ...................12, 14, 16, 20

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
  No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513
  (E.D.N.Y. Dec. 15, 2017) .................................18

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ........................12, 17

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG) (RER), 2007 WL 680779
  (E.D.N.Y. Mar. 2, 2007) ..................................12

*In re Comverse Technology, Inc. Securities
  Litigation*,
  No. 1:06-cv-01825 (E.D.N.Y.) .............................22

*In re MicroStrategy Inc. Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) .....................20

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) .......................12

*In re Petrobras Securities Litigation*,
  No. 14-cv-09662 (S.D.N.Y.) ..............................21

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ...........................15

*Johnson v. Pozen Inc.*,
No. 1:07CV599, 2008 WL 474334
(M.D.N.C. Feb. 15, 2008) ........................12, 14, 16

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) ...........................20

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036
(N.D. Ill. Aug. 6, 1997) ............................11, 12

*Palm Tran, Inc. – Amalgamated Transit Union Loc.*
*1577 Pension Plan v. Emergent Biosolutions Inc.*,
No. PWG-21-1189, 2021 WL 6072812
(D. Md. Dec. 23, 2021) .........................12, 17, 18

*Robb v. Fitbit Inc.*,
No. 16-CV-00151-SI, 2016 WL 2654351
(N.D. Cal. May 10, 2016) .................................19

*Tchatchou v. India Globalization Cap., Inc.*,
No. 8:18-CV-03396-PWG, 2019 WL 1004591
(D. Md. Feb. 28, 2019) .........................12, 17, 18

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) .....................21

**Statutes**

15 U.S.C. § 78u-4 ....................................*passim*

Private Securities Litigation Reform Act of 1995 .....*passim*

Securities Exchange Act of 1934 ...................1, 11, 15

**Rules**

Fed. R. Civ. P. 23 ...................................*passim*

iii

David A. Wenn ("Wenn") and Ted Luciani ("Luciani") respectfully submit this memorandum of law in support of their motion pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Wenn and Luciani as Co-Lead Plaintiffs on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired NET Power Inc. ("Net Power" or the "Company") securities between June 9, 2023 and March 7, 2025, both dates inclusive (the "Class Period"); and (2) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and Schiller & Schiller, PLLC ("Schiller & Schiller") as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that Defendants defrauded investors in violation of the Exchange Act. Net Power investors, including Wenn and Luciani, incurred

1

significant losses following the disclosures of Defendants' alleged fraud, which caused Net Power's share price to fall sharply, damaging Wenn, Luciani, and other Net Power investors.

Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Wenn and Luciani collectively purchased 8,589 shares of Net Power common stock, expended $86,310 on these purchases, retained 8,589 of their shares of Net Power common stock, and as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $64,581 in connection with their Class Period transactions in Net Power securities. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A. Accordingly, Wenn and Luciani believe that they have the largest financial interest in the relief sought in this Action. Beyond their considerable financial interest, Wenn and Luciani also meet

2

the applicable requirements of Rule 23 because their claims are typical of those of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute the Action on behalf of the Class, Wenn and Luciani have selected Pomerantz as Lead Counsel and Schiller & Schiller as Liaison Counsel for the Class. These firms and their attorneys are highly experienced in the areas of securities litigation and class actions and have collectively prosecuted numerous successful securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Accordingly, Wenn and Luciani respectfully request that the Court enter an order appointing them as Co-Lead Plaintiffs for the Class and approving their selection of Pomerantz as Lead Counsel and Schiller & Schiller as Liaison Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the Action, Net Power is a clean energy technology company. Dkt. No. 1 ¶ 2. Its

3

business is centered around its so-called "Net Power Cycle" technology, which is a purported novel power generation system designed to produce reliable and affordable electricity from natural gas while capturing virtually all atmospheric emissions. *Id.*

Net Power has a facility located in La Porte, Texas, which it uses to demonstrate the viability of the NET Power Cycle, referred to as "La Porte" or the "Demonstration Plant." *Id.* ¶ 3.

Net Power conducts research and equipment validation testing campaigns at the Demonstration Plant as part of its efforts to develop its first utility-scale plant, which it variably refers to as "SN1" or "Project Permian." *Id.* ¶ 4. Project Permian is located at a site in the Permian Basin of West Texas. *Id.*

Since before the start of the Class Period, Defendants had represented that they anticipated SN1 to be operational in 2026. *Id.* ¶ 5. In 2023, Net Power's cost estimate for Project Permian was roughly $950 million, which increased to $1.1 billion in 2024. *Id.*

4

Net Power's commencement of commercial operations and, accordingly, its business and financial prospects, rely on its completion of Project Permian. *Id.* ¶ 6. As such, Defendants' projected timelines and cost estimates for Project Permian are of particular importance to investors and analysts. *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. *Id.* ¶ 7. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Net Power was unlikely to complete Project Permian on schedule, and the project was likely to be significantly more expensive than Defendants had represented, because of, *inter alia*, supply chain issues and numerous site- and region-specific challenges; (ii) accordingly, Defendants' projections regarding the time and capital needed to complete Project Permian were unrealistic; (iii) the increased time and capital needed to complete Project Permian were likely to have a significant negative impact on the Company's business and financial results; and

5

(iv) as a result, Defendants' public statements were materially false and misleading at all relevant times. *Id.*

On November 14, 2023, during pre-market hours, Net Power issued a press release announcing its third quarter 2023 results and providing a business update. *Id.* ¶ 8. Therein, the Company disclosed that "[d]ue to . . . tightness in the global supply chain, we are incorporating a 12-month cushion into our expected schedule for Project Permian" with Defendants "now expecting to achieve initial power generation sometime between the second half of 2027 and first half of 2028." *Id.* This represented a significant delay from Defendants' initial schedule to have the plant operational by 2026. *Id.*

On this news, Net Power's stock price fell $2.47 per share, or 18.54%, to close at $10.85 per share on November 14, 2023. *Id.* ¶ 9.

On March 10, 2025, during pre-market hours, Net Power issued a press release announcing its fourth quarter and full year 2024 results and providing a business update. *Id.* ¶ 10. Therein, Net Power disclosed that it "now estimates Project Permian's total installed cost to be between $1.7 billion and

6

$2.0 billion"—significantly higher than its last estimate of $1.1 billion—"which is inclusive of non-recurring first-of-a-kind, Project Permian site-specific and owner costs[,]" advising that "there are a number of site- and region-specific challenges which impact cost." *Id.* The Company further advised that Project Permian "would come online no earlier than 2029[,]" representing a significant delay from its prior timeline of sometime between the second half of 2027 and first half of 2028. *Id.* In addition, Net Power reported that it ended 2024 "with $533 million in cash, cash equivalents, and investments, down from $580 million last quarter, primarily due to $13 million in operating cash outflows and $29 million in capital expenditures for La Porte upgrades and SN1 development." *Id.*

On this news, Net Power's stock price fell $2.18 per share, or 31.46%, to close at $4.75 per share on March 10, 2025. *Id.* ¶ 11.

Then, on April 15, 2025, Net Power issued a press release announcing that its President and Chief Operating Officer ("COO") and Chief Financial Officer would depart the Company

7

Case 1:25-cv-00296-LAF-JGM    Document 5    Filed 06/17/25    Page 11 of 30

on May 1, 2025, and that the Company had appointed a new COO, effective immediately.  *Id.* ¶ 12.

On this news, Net Power's stock price fell $0.13 per share, or 5.75%, to close at $2.13 per share on April 16, 2025.  *Id.* ¶ 13.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Wenn, Luciani, and other Class members have suffered significant losses and damages.  *Id.* ¶ 14.

**QUESTIONS PRESENTED**

1.  Whether Wenn and Luciani should be appointed Co-Lead Plaintiffs on behalf of the Class; and

2.  Whether Pomerantz and Schiller & Schiller should be appointed Lead Counsel and Liaison Counsel, respectively, for the Class.

**ARGUMENT**

## I.  WENN AND LUCIANI SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Wenn and Luciani should be appointed Co-Lead Plaintiffs because they have timely filed a motion for appointment as Co-Lead Plaintiffs, have the largest financial interest in this Action to their knowledge, and otherwise strongly satisfy the requirements of Rule 23.

8

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Wenn and Luciani satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### A. Wenn and Luciani Are Willing to Serve as Class Representatives and Have Timely Filed This Motion to Be Appointed Co-Lead Plaintiffs.

On April 18, 2025, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *ACCESS Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Net Power and other defendants, and advising investors in Net Power securities that they had until June 17, 2025—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Lieberman Decl., Ex. B.

Wenn and Luciani have filed the instant motion pursuant to the Notice, and they have attached sworn Certifications attesting that they are willing to serve as representatives

10

for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Wenn and Luciani satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

**B. Wenn and Luciani Have the "Largest Financial Interest" in the Action.**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of their knowledge, Wenn and Luciani have the largest financial interest of any Net Power investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill.

11

Aug. 6, 1997).  In accord with other courts nationwide,[1] these so-called *Lax* factors have been adopted and applied by courts in the Fourth Circuit.  *See, e.g.*, *Tchatchou v. India Globalization Cap., Inc.*, No. 8:18-CV-03396-PWG, 2019 WL 1004591, at *4 (D. Md. Feb. 28, 2019); *see also Palm Tran, Inc. – Amalgamated Transit Union Loc. 1577 Pension Plan v. Emergent Biosolutions Inc.*, No. PWG-21-1189, 2021 WL 6072812, at *4 (D. Md. Dec. 23, 2021) ("In the absence of a statutory directive, many courts have applied a four-factor test (the *Lax* factors)[.]").  Of the *Lax* factors, courts in this District tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See, e.g.*, *Johnson v. Pozen Inc.*, No. 1:07CV599, 2008 WL 474334, at *2 n.3 (M.D.N.C. Feb. 15, 2008) (equating financial interest with monetary loss); *Hirtenstein v. Cempra, Inc.*, No. 1:16CV1303, 2017 WL 2874588, at *3-4 (M.D.N.C. July 5, 2017) (same).

---

[1] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

During the Class Period, Wenn and Luciani collectively: (1) purchased 8,589 shares of Net Power common stock; (2) expended $86,310 on these purchases; (3) retained 8,589 of their shares of Net Power common stock; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $64,581 in connection with their Class Period transactions in Net Power securities. *See* Lieberman Decl., Ex. A. To the extent that Wenn and Luciani possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**C.    Wenn and Luciani Otherwise Satisfy the Requirements of Rule 23.**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims

> or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether lead plaintiff movants satisfy Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, at this stage of the litigation, only a *prima facie* showing of typicality and adequacy is required. *See Hirtenstein*, 2017 WL 2874588, at *4; *Chamblee v. Terraform Power, Inc.*, No. CV PX 16-981, 2016 WL 4039178, at *2 (D. Md. July 28, 2016). Moreover, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Wenn and Luciani. *See* Dkt. No. 1 ¶¶ 85, 88.

"The typicality requirement of [Rule 23] requires that a Lead Plaintiff suffer the same injuries as the class as a result of the defendant's conduct and has claims based on the same legal issues." *Johnson*, 2008 WL 474334, at *2. "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality

14

requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Wenn and Luciani's claims are typical of those of the Class. Wenn and Luciani allege, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Net Power, or by omitting to state material facts necessary to make the statements they did make not misleading. Wenn and Luciani, like other Class members, purchased or otherwise acquired Net Power securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosures of those misrepresentations and/or omissions that drove Net Power's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and

15

course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"Adequate representation requires a finding that the purported class representative and its attorney are capable of pursuing the litigation and that neither has a conflict of interest with other class members." *Johnson*, 2008 WL 474334, at *2; *see also Hirtenstein*, 2017 WL 2874588, at *4 (same).

Wenn and Luciani are adequate representatives for the Class. As set forth in greater detail below, in Pomerantz and Schiller & Schiller, Wenn and Luciani have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submit their choice of Pomerantz and Schiller & Schiller to the Court for approval as Lead Counsel and Liaison Counsel, respectively, for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Wenn and Luciani's interests and those of the Class. Moreover, Wenn and Luciani have each submitted a sworn Certification declaring their respective commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and their significant financial interest demonstrates

16

that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

Further, Wenn and Luciani constitute an appropriate movant duo of the type routinely appointed to serve as co-lead plaintiffs. *See, e.g.*, *Palm Tran*, 2021 WL 6072812, at *5 (appointing movant duo, finding "[n]ot having a pre-litigation relationship does not disqualify a group, and the parties here represent that they chose to work together based on their mutual shared interests in maximizing the Class's recovery" (internal quotation marks omitted)); *Tchatchou*, 2019 WL 1004591, at *7-9 (appointing group of seven as lead plaintiff under the PSLRA); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiffs); *Cendant*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)).

Wenn and Luciani likewise have demonstrated their adequacy because they are a cohesive movant duo who have submitted a Joint Declaration attesting to, *inter alia*, their

17

respective backgrounds and investing experience, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Lieberman Decl., Ex. D. Courts routinely appoint more than one investor as co-lead plaintiffs pursuant to the PSLRA under such circumstances. *See, e.g.*, *Palm Tran*, 2021 WL 6072812, at *5-6 (appointing two investors as co-lead plaintiffs that "submitted a joint declaration attesting to their discussions with one another and with counsel regarding their joint motion, their understanding of their responsibilities, and their readiness to take on those responsibilities"); *Tchatchou*, 2019 WL 1004591, at *8 (appointing investor group that submitted a declaration that "signals to [the court] that [the group]'s members are prepared to play an active role in this litigation and to monitor the actions of their selected counsel"); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (appointing group of four unrelated

18

investors that submitted a declaration attesting "it is prepared to work cooperatively to serve the best interests of the class"); *Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351, at *4, *7 (N.D. Cal. May 10, 2016) (appointing group of five unrelated investors that submitted a joint declaration "stat[ing] that the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus").

**D.  Wenn and Luciani Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses.**

The presumption favoring Wenn and Luciani's appointment as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Wenn and Luciani's ability and desire to fairly and adequately represent the Class has been discussed above. Wenn

19

and Luciani are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class. Accordingly, Wenn and Luciani should be appointed Co-Lead Plaintiffs for the Class.

## II. CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain counsel for the Class, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Hirtenstein*, 2017 WL 2874588, at *5 (approving lead plaintiff's selection of counsel); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 438 (E.D. Va. 2000) ("[A] district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources[.]"); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'"

(quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))).

Here, Wenn and Luciani have selected Pomerantz as Lead Counsel and Schiller & Schiller as Liaison Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Lieberman Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz,

including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

Schiller & Schiller is also well-qualified to serve as Liaison Counsel for the Class. As its firm resume reflects, Schiller & Schiller maintains an office in North Carolina, where the Action and this Court is situated, and the firm specializes in shareholder class action matters, among other practice areas. *See id.*, Ex. F. In addition, Schiller & Schiller has extensive familiarity with the Local Civil Rules and practice norms of this District. *See id.*

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, Wenn and Luciani's counsel, Pomerantz and Schiller & Schiller, have the skill, knowledge, expertise, and experience that will enable these firms to prosecute the Action effectively and expeditiously. Thus, the Court may be assured that by approving Wenn and Luciani's selection of

22

Pomerantz as Lead Counsel and Schiller & Schiller as Liaison Counsel, the members of the Class will receive the best legal representation available.

**CONCLUSION**

For the foregoing reasons, Wenn and Luciani respectfully request that the Court issue an Order: (1) appointing Wenn and Luciani as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz as Lead Counsel and Schiller & Schiller as Liaison Counsel for the Class.

Dated:  June 17, 2025

Respectfully submitted,

**SCHILLER & SCHILLER, PLLC**

*/s/ David G. Schiller*
David G. Schiller (NC Bar # 26713)
304 East Jones Street
Raleigh, North Carolina 27601
Telephone: (919) 789-4677
Facsimile: (919) 789-4469
david@schillerfirm.com

*Counsel for Co-Lead Plaintiff Movants*
*David A. Wenn and Ted Luciani and*
*Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor

23

New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Co-Lead Plaintiff Movants*
*David A. Wenn and Ted Luciani and*
*Proposed Lead Counsel for the Class*

24

**CERTIFICATE OF WORD COUNT**

PURSUANT TO LR 7.3(d)(1), I hereby certify that this brief contains 4,110 words as counted by Microsoft Word, and therefore complies with the word count limits set out in LR 7.3(d)(1).  This brief was prepared in 13-point Courier New font.

*/s/ David G. Schiller*
David G. Schiller

25

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ David G. Schiller*
David G. Schiller