UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TED LUCIANI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NET POWER INC., DANIEL J. RICE IV, AKASH PATEL, and BRIAN ALLEN,<br><br>Defendants. | Case No. 1:25-cv-00296-LAF-JGM |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DAVID A. WENN AND TED LUCIANI FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF COUNSEL**

## TABLE OF CONTENTS

ARGUMENT ............................................. 1

CONCLUSION .......................................... 16

CERTIFICATE OF WORD COUNT ................................. 18

CERTIFICATE OF SERVICE ................................. 19

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Averza et al. v. Super Micro Computer, Inc., et
al.*,
   No. 5:24-CV-06147-EJD, 2025 WL 1771455
   (N.D. Cal. June 26, 2025) ...................1, 10, 11, 16

*Bhojwani v. Pistiolis*,
   No. 06 CIV 13761 CM KNF, 2007 WL 2197836
   (S.D.N.Y. June 26, 2007),
   *report and recommendation adopted in part,
   rejected in part on different grounds*,
   No. 06 CIV. 13761 CM NKF, 2007 WL 9228588
   (S.D.N.Y. July 31, 2007) .........................5, 6, 7

*Camp v. Qualcomm Inc.*,
   No. 18-CV-1208-AJB-BLM, 2019 WL 277360
   (S.D. Cal. Jan. 22, 2019) ...........................2, 8

*Dhatt v. Enviva, Inc.*,
   No. CV MJM-23-2474, 2024 WL 580671
   (D. Md. Feb. 13, 2024)
   ........................................11, 12, 13, 14

*Gross v. AT&T Inc.*,
   No. 19-CV-2892, 2019 WL 7759222
   (S.D.NY. June 24, 2019) ...............................5

*Rodriguez v. DraftKings Inc.*,
   No. 21 CIV. 5739 (PAE), 2021 WL 5282006
   (S.D.N.Y. Nov. 12, 2021) ........................2, 8, 11

*Tomaszewski v. Trevena, Inc.*,
   383 F. Supp. 3d 409 (E.D. Pa. 2019) .................2, 9

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte &
   Touche LLP*,
   549 F.3d 100 (2d Cir. 2008) ...........................5

**Statutes**

15 U.S.C. § 78u-4 ....................................4, 8

Private Securities Litigation Reform Act of 1995 ....4, 7, 8

**Rules**

Fed. R. Civ. P. 23 ...............................2, 9, 16

Co-Lead Plaintiff Movants Wenn[1] and Luciani respectfully submit this reply memorandum of law in further support of their motion for appointment as Co-Lead Plaintiffs and approval of their selection of Pomerantz as Lead Counsel and Schiller & Schiller as Liaison Counsel (Dkt. No. 4).

**ARGUMENT**

Schroeder's opposition papers (Dkt. Nos. 13-14) acknowledge significant errors in his motion papers to date, while evincing a casual disregard for their significance to this litigation. Courts routinely disqualify lead plaintiff movants with falsities and errors in their submissions, recognizing that "much is at stake for the putative class" in selecting a lead plaintiff, that "[h]olding lead plaintiffs to a high standard helps identify the most capable lead plaintiff[,]" and that "it is incumbent upon the Court to carefully scrutinize potential class representatives." *Averza et al. v. Super Micro Computer, Inc., et al.*, No. 5:24-CV-06147-EJD, 2025 WL 1771455, at *3-4, *11 (N.D. Cal. June 26, 2025) (disqualifying movant where there was "serious

---

[1] All capitalized terms herein are defined in Wenn and Luciani's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 5, 15.

1

doubt about [its] willingness or ability to meet its obligations of candor to the Court and the putative class"). *See also Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *6 (S.D.N.Y. Nov. 12, 2021) (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy"); *Camp v. Qualcomm Inc.*, No. 18-CV-1208-AJB-BLM, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (finding errors in submissions prohibit movant from satisfying Rule 23); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (disqualifying movant where errors in sworn certification showed a "substantial degree of carelessness").

Here, Schroeder's initial Certification (the "Original Certification") (Dkt. No. 8-2) and opening brief gave every indication that he was the ***sole*** owner of ***all nine*** accounts listed in his Original Certification, while his opening brief repeatedly and unambiguously claimed all losses attributable to those accounts were his alone. *See* Dkt. No. 15 at 21-22, 29-30. Then, six days later, Schroeder's counsel eventually admitted—after inquiry by Wenn and Luciani's counsel—that

Schroeder does **not**, in fact, own one of the nine accounts (Account 6), which belongs to the Jennifer Hansmann Schroeder Irrevocable Trust (the "Trust"), and that **three** of the nine accounts (Accounts 3, 5, and 9) are **not** owned by Schroeder alone, but rather "jointly with his spouse[.]" Dkt. No. 15-3 at 2.

Then, Schroeder belatedly submitted "a revised certification" with his opposition papers, "providing additional information regarding Schroeder's nine accounts." Dkt. No. 13 at 8; *see also* Dkt. No. 14-1 (the "Amended Certification"). The Amended Certification clearly acknowledges the Trust's status as a distinct legal entity and its ownership of Account 6. *See* Dkt. No. 14-1 at *2, *6, *11, *25. In the Amended Certification, Schroeder made declarations on his own behalf "**and as Trustee of the [Trust,]**" including that he "authorize[s] the filing of a lead plaintiff motion on behalf of [him]self individually **and in [his] capacity as trustee of the Trust**"; asserted for the first time that he is "duly authorized to institute legal action **on the Trust's behalf**"; stated that "[he] (**and the Trust**) will not accept any payment for serving as a

representative party, except . . . as ordered or approved by the court"; and identified Account 6 as the "***Trust*** Account". *Id.* (emphases added). The Amended Certification stands in stark contrast with the attestations in his Original Certification, all of which were made plainly in his personal capacity.

Schroeder nevertheless insists that "his original certification complies with the PSLRA" and that he only submitted the Amended Certification "to the extent Wenn and Luciani intend to argue that [his original] certification is erroneous because it lacks this additional information[.]" Dkt. No. 13 at 9. Schroeder's position, however, is a transparent attempt to have it both ways—that is, he seeks to put a legally sufficient Amended Certification in the record without having to acknowledge that his Original Certification was false and defective—as it most assuredly was. The PSLRA requires that "***[e]ach plaintiff*** seeking to serve as a representative party on behalf of a class shall provide a sworn certification . . . that . . . sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint[.]" 15 U.S.C. § 78u-4(a)(2)(A)(iv)

4

(emphasis added).  It is axiomatic that a plaintiff only has standing to pursue recovery of investment losses in connection with securities of which it is the beneficial owner.  *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (an asset manager has Article III standing to sue for injuries to customers who are the beneficial owners of the securities at issue only if it has "legal title to, or a proprietary interest in, the claim"); *Gross v. AT&T Inc.*, No. 19-CV-2892, 2019 WL 7759222, at *1 (S.D.NY. June 24, 2019) (denying motion by asset manager that "does not own the underlying securities and has not been assigned an ownership interest in the claims at issue" and was thus "not an adequate lead plaintiff because it was subject to a unique defense" regarding standing).  *See also Bhojwani v. Pistiolis*, No. 06 CIV 13761 CM KNF, 2007 WL 2197836, at *5 (S.D.N.Y. June 26, 2007), *report and recommendation adopted in part, rejected in part on different grounds*, No. 06 CIV. 13761 CM NKF, 2007 WL 9228588 (S.D.N.Y. July 31, 2007) (rejecting premise that a movant that "moves individually" can add his family members' and family business's losses to his own because "neither his family

members nor the family business are movants"). Accordingly, Schroeder's failure to even acknowledge the Trust's existence in his Original Certification, while nonetheless claiming its investment losses as his own, plainly renders his Original Certification false and defective.

*Pistiolis* is instructive. There, the Court found that a movant had improperly aggregated, *inter alia*, a family business's losses with his own in moving for lead plaintiff appointment individually, notwithstanding that he was the business's trustee, managed its investment account, and made all investment decisions with respect to that account:

> Although DeShayes moves individually and neither his family members nor the family business are movants in this action, he added their losses to his own.
>
> * * *
>
> DeShayes' son, the owner of the family business, submitted an affidavit in which he stated that DeShayes "was authorized to represent the interests and losses suffered by [the family business] as a result of its investments in Top Tankers." That affidavit also stated that DeShayes "manages [the family business's] retirement investment account" and that, in that capacity, he "made all investment decisions regarding the purchase and sale of Top Tankers securities for [the family business's] investment account." ***That DeShayes manages the family business retirement account or acts as a trustee for the family business . . . does not entitle him to add the family business' losses to***

6

> **his own . . . because the family business is not the movant in this case.**

*Pistiolis*, 2007 WL 2197836, at *5 (emphasis added).

Like the movant in *Pistiolis*, Schroeder moved for lead plaintiff appointment individually and, "[a]lthough . . . the [Trust is not a] movant[] in this action, he added [its] losses to his own." *Id.* This was impermissible notwithstanding that Schroeder purportedly "made all investment decisions regarding the purchase and sale of [Net Power] securities for [the Trust's] investment account" or "manages the [Trust's] account or acts as a trustee for the [Trust] . . . because **the [Trust] is not the movant in this case**." *Id.* (emphasis added). It is undisputed that the statutory deadline to move for appointment as lead plaintiff in this Action passed **over two weeks ago** on June 17, 2025. *See* Dkt. No. 5 at 10; Dkt. No. 7 at 8. To date, the Trust has **not** filed a motion for appointment as lead plaintiff in this Action and is **not** a party or movant in this Action. If the Trust **did** intend to serve as a representative party in this Action, then pursuant to the PSLRA, it needed to observe the requisite legal formalities and submit its **own** Certification that sets forth its **own** transactions in Net

7

Power securities by the statutory deadline (*see* 15 U.S.C. §§ 78u-4(a)(2)(A)(iv)), which it has ***still*** failed to do. Accordingly, Schroeder's inclusion of the Trust's shares and, accordingly, its losses as his own in his motion papers was improper and renders his Original Certification defective. Moreover, the fact that Schroeder felt compelled to submit an Amended Certification with his opposition brief—notwithstanding his characterization of it as a mere fail-safe measure—further undermines his insistence that the Original Certification "complies with the PSLRA".

Schroeder's errors and misrepresentations are not limited to his Original Certification. Schroeder also falsely claimed Account 6's losses as his own throughout his opening brief and gave every impression that he owned all nine accounts listed in his Original Certification, as detailed at length in Wenn and Luciani's opposition brief. *See* Dkt. No. 15 at 21-22, 29-30. This alone is disqualifying. *See DraftKings*, 2021 WL 5282006, at *6 (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy"); *Qualcomm*, 2019 WL 277360, at *3-4 (finding errors

8

in submissions prohibit movant from satisfying Rule 23); *Trevena*, 383 F. Supp. 3d at 414 (disqualifying movant where errors in sworn certification showed a "substantial degree of carelessness").

The various errors and false statements in Schroeder's submissions to date cast significant doubt on the reliability of his representations to the Court. While Schroeder suggests that the foregoing issues are somehow cured by his belated submission of the Amended Certification with his opposition brief (*see* Dkt. No. 13 at 9), the fact remains that his opening brief and Original Certification were littered with misrepresentations that gave every indication that he was the ***sole*** owner of ***all nine*** accounts, with his opening brief repeatedly and unambiguously claiming that all losses attributable to those accounts were ***his alone***. *See* Dkt. No. 15 at 21-22, 29-30. Moreover, in his opposition brief, Schroeder continues to confuse Account 6 for his own account, stating that he submitted the Amended Certification to "provid[e] additional information regarding ***[his] nine*** accounts." Dkt. No. 13 at 8 (emphasis added). As has been well established at this point, the nine accounts are not

9

"*Schroeder's*" as he continues to insist in his opposition brief. *Id.* One of the nine accounts (Account 6) indisputably belongs to the Trust—a separate legal entity—as the Amended Certification makes perfectly clear. *See* Dkt. No. 14-1 at *2, *6, * 11, *25. That Schroeder continues to conflate his role as Trustee of the Trust with personal ownership of Account 6, even "[a]fter [Wenn and Luciani] pointed out the issue" with his claiming such ownership, makes Schroeder's "efforts to downplay [his] error . . . ineffective." *Super Micro*, 2025 WL 1771455, at *11. "[Schroeder] was on notice of the need for precision yet failed to [be] precise . . . about [his] ownership [of Account 6] after multiple chances to do so." *Id.* This "casts serious doubt about [Schroeder]'s willingness or ability to meet [his] obligations of candor to the Court and the putative class" and "render[s him] inadequate." *Id.* at *8, *11.

Either Schroeder did not know that it was incorrect to claim as his own the losses incurred by the Trust—a separate legal entity—or he did know but did not consider it necessary to make the distinction in his motion papers. Neither scenario reflects well on his fitness to oversee the fraud

10

claims in this Action.  Schroeder's imprecise and casual approach to identifying "his" losses and claiming ownership of investment accounts highlights a "close-enough mindset[, which] is symptomatic of the inattention and carelessness that the lead plaintiff selection process is intended to filter out."  *Id.* at *11; *see also DraftKings*, 2021 WL 5282006, at *6, *9 (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy" and disqualifying said movant because, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place").

Schroeder cites a single, inapposite case, *Dhatt v. Enviva, Inc.*, No. CV MJM-23-2474, 2024 WL 580671 (D. Md. Feb. 13, 2024), for the proposition that, "[e]ven if [his] original certification contained errors[,]" it "would not impact [his] ability to adequately represent the class"—essentially conceding the weakness of his own position that his Original Certification was accurate.  Dkt. No. 13 at 9.  In *Enviva*, a movant submitted an "initial transaction summary [with his

11

certification that] erroneously indicate[d] that he purchased 196,925 shares of Enviva common stock in a single transaction on April 6, 2023, and then sold the same number of shares in a single transaction on May 9, 2023." 2024 WL 580671, at *3. The movant later owned up to the error in a declaration, "explaining that the transaction summary . . . was based on how the transactions were recorded in monthly statements provided to him by his wealth manager[,]" "that he had ordered the purchase of the Enviva shares in a single order and ordered the sale of the shares in a separate single order[,]" and that he learned from his wealth manager after filing his motion "that the trades were conducted in multiple smaller transactions[.]" *Id.* When corrected, this "result[ed] in a reduction of approximately $512 in the loss amount initially reported by" the movant, which "still exceed[ed] $3 million" after correction. *Id.* Accordingly, the error at issue in *Enviva* was, as described in the opinion, the result of a minor and understandable technical mistake with a less than 0.02% impact on the movant's total losses. *See id.*

Here, by contrast, Schroeder's "error" is not so minor as misreading a transaction statement. Rather, Schroeder

12

incorrectly claimed the investment losses incurred by the Trust, a separate legal entity, as his own. As discussed *supra*, this error was reflected in both his Original Certification and throughout his motion brief (*see* p. 2). Moreover, because Schroeder has represented that he "made all investment decisions in [Account 6] with respect to the Net Power securities transactions at issue in this action" (Dkt. No. 15-3 at 2), he was presumably aware that Account 6 was owned by the Trust when he made these representations. Accordingly, unlike the movant at issue in *Enviva*, Schroeder's "error" cannot be chalked up to a minor mistake in reviewing a transaction statement. Rather, Schroeder's errors implicate his very understanding of the ownership of the securities at issue in this litigation and thus his standing to pursue recovery of his claimed investment losses.

Moreover, in *Eviva*, the movant at issue expressly sought appointment as lead plaintiff "on behalf of himself ***and as Trustee of the Katherine J. Davis Irrevocable Trust***" in the first instance by the PSLRA's statutory deadline. Reply Declaration of Jeremy A. Lieberman in Further Support of Motion ("Reply Decl."), Ex. A (the "Enviva Motion") at 1; *see*

13

*also id.*, Ex. B (the "Enviva Certification"). The movant in *Enviva* submitted the Enviva Certification "on behalf of [him]self, ***and*** as Trustee of the Katherine J. Davis Irrevocable Trust"; "authorize[d] . . . the filing of [a] lead plaintiff motion on behalf of [him]self ***and*** the Trust"; made clear that he was "duly authorized to institute legal action ***on the Trust's behalf***"; stated that "[he] ***and*** the Trust are willing to serve as representative parties on behalf of a class"; set forth "[his] ***and*** the Trust's transactions in Enviva Inc. securities during the class period"; and listed that trust's transactions in Enviva securities under the heading "Katherine J. Davis Irrevocable Trust[,]" thereby clearly identifying them as belonging to the trust. *See* Reply Decl., Ex. B at *2-3 (emphases added). Significantly, Schroeder's counsel in this litigation—Glancy Prongay Wolke & Rotter LLP ("GPM")—represented the movant in *Enviva*. *See id.*, Ex. A at 2. The fact that GPM considered it necessary to style the *Enviva* Certification as they did (*i.e.*, "on behalf of myself ***and*** the Trust") makes it difficult to credit the argument that Schroeder's Original Certification in ***this*** litigation was legally sufficient.

14

In sum, Schroeder's opposition papers further highlight his lack of candor and transparency, and the care and diligence required of a budding class representative, plainly rendering him inadequate to represent the Class. This case is a complex securities fraud class action wherein the Court-appointed Lead Plaintiff must be prepared to, *inter alia*, undertake the intensive and detail-oriented work that is necessary to supervise its counsel and the Action on behalf of a Class of potentially hundreds or thousands of injured investors. As argued in Wenn and Luciani's opposition brief, Schroeder's, *inter alia*, various unorthodox trading patterns (short-selling, high-frequency day trading, in-and-out trades in certain accounts, and voluminous options transactions of various type), as well as his lack of transparency and candor to the Court regarding pertinent information related to his role as a ***defendant*** in a ***securities fraud class action*** like the instant Action, renders him an atypical and inadequate Class representative that is subject to disqualifying unique defenses. *See* Dkt. No. 15 at 3-28. The fact that Schroeder, at the very outset of this litigation ***and*** in his opposition papers, has failed to observe the requisite legal formalities

15

with respect to the losses and shares he claims to pursue further demonstrates his inadequacy under Rule 23, mandating denial of his motion. *See Super Micro*, 2025 WL 1771455, at *3-4, *11 (recognizing that "much is at stake for the putative class" in selecting a lead plaintiff, that "[h]olding lead plaintiffs to a high standard helps identify the most capable lead plaintiff[,]" that "it is incumbent upon the Court to carefully scrutinize potential class representatives", and disqualifying movant where there was "serious doubt about [its] willingness or ability to meet its obligations of candor to the Court and the putative class").

**CONCLUSION**

For the foregoing reasons, Wenn and Luciani respectfully request that the Court issue an Order: (1) appointing Wenn and Luciani as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz as Lead Counsel and Schiller & Schiller as Liaison Counsel for the Class.

Dated:  March 13, 2026

Respectfully submitted,

**SCHILLER & SCHILLER, PLLC**

*/s/ David G. Schiller*
David G. Schiller (NC Bar # 26713)

16

304 East Jones Street
Raleigh, North Carolina 27601
Telephone: (919) 789-4677
Facsimile: (919) 789-4469
david@schillerfirm.com

*Counsel for Co-Lead Plaintiff Movants*
*David A. Wenn and Ted Luciani and*
*Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Co-Lead Plaintiff Movants*
*David A. Wenn and Ted Luciani and*
*Proposed Lead Counsel for the Class*

17

## CERTIFICATE OF WORD COUNT

PURSUANT TO LR 7.3(d)(1), I hereby certify that this brief contains 3,071 words as counted by Microsoft Word, and therefore complies with the word count limits set out in LR 7.3(d)(1). This brief was prepared in 13-point Courier New font.


/s/ David G. Schiller
David G. Schiller

18

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ David G. Schiller*
David G. Schiller

19