**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| TED LUCIANI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NET POWER INC., DANIEL J. RICE IV, AKASH PATEL, and BRIAN ALLEN,<br><br>    Defendants. | Case No. 1:25-cv-00296-LAF-JGM<br><br><br>Hon. Lindsey A. Freeman |

**WALTER SCHROEDER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

# TABLE OF CONTENTS

I.   INTRODUCTION........................................................1

II.  SCHROEDER IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF TO BE APPOINTED AS LEAD PLAINTIFF BECAUSE HE HAS THE LARGEST FINANCIAL INTEREST..................2

III. THE PRESUMPTION THAT SCHROEDER IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED........................3

    A.   Schroeder Is Not A Day Trader Or Short Seller ....3

    B.   Schroeder's Options Transactions Make Him More Adequate To Represent The Class, Not Less Adequate .........................................7

    C.   That Schroeder Was A Defendant In A Civil Lawsuit More Than 20 Years Ago Does Not Render Him Inadequate ...................................11

    D.   Schroeder Has Not Displayed A "Lack Of Candor" With Respect To His Ownership Of His Accounts ...14

IV.  CONCLUSION.........................................................17

i

**CASES**

*Abadilla v. Precigen, Inc.*,
  2021 WL 1312746 (N.D. Cal. Apr. 8, 2021) ................14

*Chauhan v. Intercept Pharms.*,
  2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ...........8, 9, 15

*Chupa v. Armstrong Flooring, Inc.*,
  2020 WL 1032420 (C.D. Cal. Mar. 2, 2020) ................11

*Cook v. Allergan PLC*,
  2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ................10

*Dhatt v. Enviva, Inc.*,
  2024 WL 580671 (D. Md. Feb. 13, 2024) ....................3

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
  2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ................10

*Eslava v. Gulf Tel. Co., Inc.*,
  2006 WL 8437737 (S.D. Ala. Jan. 30, 2006) ...............15

*Fraim v. Chilly Dil Consulting, Inc.*,
  2022 WL 2916863 (M.D.N.C. July 25, 2022) ................15

*Gamboa v. KISS Nutraceuticals*,
  2025 WL 1088066 (D. Colo. Apr. 2, 2025) .................13

*Grad v. Ironnet, Inc.*,
  2022 WL 2789899 (E.D. Va. July 15, 2022) .............7, 11

*Hayes v. Enphase Energy, Inc.*,
  2025 WL 986469 (N.D. Cal. Mar. 31, 2025) .................6

*Hinson for Broughton v. Citibank, N.A.*,
  2017 WL 6375376 (E.D.N.C. Dec. 13, 2017) ................16

*In re Lyft Sec. Litig.*,
  2020 WL 1043628 (N.D. Cal. Mar. 4, 2020) .................8

Case 1:25-cv-00296-LAF-JGM    Document 29    Filed 03/13/26    Page 3 of 22

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
  2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) ...............15

*In re: Facebook Priv. Litig.*,
  2016 WL 4585817 (N.D. Cal. Sept. 2, 2016) ...............11

*Labelle v. Future FinTech Grp., Inc.*,
  2024 WL 4275226 (D.N.J. Sept. 24, 2024) .............12, 13

*Levie v. Sears, Roebuck & Co.*,
  496 F. Supp. 2d 944 (N.D. Ill. 2007) ....................12

*Mejia v. DHL Express (USA), Inc.*,
  2016 WL 9450680 (C.D. Cal. Feb. 25, 2016) ...............13

*Ng v. Berkeley Lights, Inc.*,
  2022 WL 1659120 (N.D. Cal. May 25, 2022) ................15

*Nursing Home Pension Fund v. Oracle Corp.*,
  2006 WL 8071391 (N.D. Cal. Dec. 20, 2006) ................6

*Sagall v. Savient Pharms., Inc.*,
  2009 WL 10868742 (S.D.N.Y. Mar. 12, 2009) ............8, 10

*Serafimov v. Netopia, Inc.*,
  2004 WL 7334061 (N.D. Cal. Dec. 3, 2004) .................6

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
  2015 WL 1311073 (S.D.N.Y. Mar. 23, 2015) .................9

**STATUTES**

15 U.S.C. § 78u-4(a)(2)(A)(iv) ...........................14

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .......................3

**RULES**

Fed. R. Civ. P. 17(a)(1)(E) ..............................15

iii

Lead Plaintiff Movant Walter Schroeder ("Schroeder") submits this reply memorandum of law in further support of his motion for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 6), and in response to the opposition to his motion filed by David A. Wenn ("Wenn") and Ted Luciani ("Luciani") (Dkt. No. 15, "W&L Opp.").[1]

## I.  INTRODUCTION

Schroeder is the presumptively most adequate plaintiff to be appointed as lead plaintiff because, as Wenn and Luciani concede, Schroeder has the largest financial interest.

Faced with this, Wenn and Luciani attempt to rebut the presumption by launching several attacks on Schroeder's adequacy and typicality, all of which are baseless. For example, Wenn and Luciani claim that Schroeder is a day trader and short seller, but fail to identify any *bona fide* instances of it. They claim that Schroeder's options transactions render him atypical of the class (which includes options traders). They claim Schroeder is inadequate because he was accused of fraud in a civil (not criminal) action more than 20 years ago. And they accuse Schroeder of hiding the fact

---

[1] Leave to file this reply was granted on March 6, 2026.

that he owns joint accounts with his spouse and is trustee of a trust account, without articulating any reason why Schroeder would hide such information. As such, Wenn and Luciani have failed to prove that Schroeder is inadequate or atypical, and have therefore failed to rebut the presumption that Schroeder is the most adequate plaintiff.

Accordingly, Schroeder should be appointed as lead plaintiff and his selection of counsel should be approved.

## II. SCHROEDER IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF TO BE APPOINTED AS LEAD PLAINTIFF BECAUSE HE HAS THE LARGEST FINANCIAL INTEREST

Schroeder has the largest financial interest because, as Wenn and Luciani concede (*see* W&L Opp. at 2), Schroeder has the largest loss:

| Movant | LIFO Loss |
|---|---|
| Schroeder | $279,357 |
| *Wenn* | *$50,534* |
| *Luciani* | *$14,047* |
| Total | $64,581 |

Since Schroeder also filed a timely motion and made the required preliminary showing that he satisfies the requirements of Rule 23 (*see* Dkt. No. 7), Schroeder is the presumptively most adequate plaintiff to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

2

## III. THE PRESUMPTION THAT SCHROEDER IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The presumption that Schroeder is the most adequate plaintiff may be rebutted only upon "proof" that Schroeder "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Such "proof" requires evidentiary support; speculation and conclusory assertions are insufficient. *See Dhatt v. Enviva, Inc.*, 2024 WL 580671, at *3 (D. Md. Feb. 13, 2024).

Wenn and Luciani attempt to rebut the presumption on multiple bases. Each attempt fails for the reasons below.

### A.  Schroeder Is Not A Day Trader Or Short Seller

Wenn and Luciani argue that Schroeder is inadequate and subject to unique defenses because he is a "high-frequency day trader" and "short seller." *See* W&L Opp. at 3-20. This attack is baseless for multiple reasons.

First and foremost: Schroeder is not a day trader or short seller. Wenn and Luciani accurately define what high-frequency day trading is: "Day trading is [when] individuals buy and sell [the same] securities within the same day *with*

3

*the goal of profiting from short-term price movements*." *See* W&L Opp at 5 (emphasis added). However, Wenn and Luciani do not identify any trading that meets this definition. Instead, Wenn and Luciani simply assert that because Schroeder had "1,211 Class Period transactions" he is "clearly a pattern high-frequency day trader." W&L Opp. at 9. Wenn and Luciani also assert that Schroeder is a day trader because he "purchased and sold *various* Net Power securities . . . during single trading days." W&L Opp. at 5 (emphasis added). The conclusion does not follow from these premises. Executing many transactions, or buying and selling *different* securities on the same day are not instances of day trading because such activity plainly does not meet the definition.

While Schroeder counts just nine instances in which he bought and sold the same shares on the same day, they were all the result of options closing transactions, not day trading. For example, in account 3, on January 22, 2024, Schroeder purchased 500 shares at $10.00 per share because a put option he sold was exercised by the other party. *See* Dkt. No. 8-2 at 4, 16. He then immediately sold those shares for $8.79 on the open market, realizing the loss on the options

4

transaction. *Id.* The purchase was clearly identified as an "Option Exercise or Assignment." *Id.* at 4, 9. While this purchase and sale happened on the same day, Schroeder was not buying and selling the shares "with the goal of profiting from short-term [intra-day] price movements" as a day trader does. *See* W&L Opp at 5.

Schroeder is also not a short seller. Wenn and Luciani accurately define what a short seller is: "[A]n investor who sells a [borrowed] security **with the intention of repurchasing it later at a lower price**." W&L Opp. at 7 (emphasis added). The reason short sellers may be inadequate lead plaintiffs is that "a short seller . . . **trades in the expectation that a security's value will go down**." *Id.* (emphasis added). Notably, the fact that an investor has a short sale or two does not make the investor a "short seller." A short seller necessarily engages in an investment strategy premised on the belief that the company's stock price will fall.

Wenn and Luciani do not identify any trading that meets this definition. Wenn and Luciani identify two transactions that Schroeder identified as short sales on his

5

certification. *See id.* at 7-8. However, both of the transactions resulted from options closing transactions, as discussed *supra*. Schroeder was forced to sell stock at below-market prices, which he then promptly re-purchased at market prices to cover. *See* Dkt. No. 8-2 at 6, 21-22. The sales were not premised on the expectation that Net Power's stock price would fall, and thus Schroeder is not a "short seller" in the sense that Wenn and Luciani claim.

Moreover, even if Schroeder had engaged in a small amount of short selling and day trading (he did not), that would not render him inadequate. *See Hayes v. Enphase Energy, Inc.*, 2025 WL 986469, at *2 (N.D. Cal. Mar. 31, 2025) (the other movants failed to "point[] to any controlling law that requires Praytor's disqualification on this basis").

Also, setting aside any alleged day trading or short selling, Schroeder has substantial losses on stock and warrants he purchased on the open market and held. *See Serafimov v. Netopia, Inc.*, 2004 WL 7334061, at *6 (N.D. Cal. Dec. 3, 2004)("[W]here a plaintiff has engaged in both day and retention trading, he may nonetheless be an appropriate lead plaintiff . . . ."); *see also Nursing Home Pension Fund*

6

*v. Oracle Corp.*, 2006 WL 8071391, at *8 (N.D. Cal. Dec. 20, 2006) (similar, regarding short selling).

As such, Wenn and Luciani have failed to prove that Schroeder is inadequate, atypical, or subject to unique defenses on the basis that he is a day trader or short seller.

**B. Schroeder's Options Transactions Make Him More Adequate To Represent The Class, Not Less Adequate**

Wenn and Luciani further argue that "the fact that 804 of Schroeder's purported 1,211 Class Period transactions in Net Power securities involved purchases and sales of both call and put options" is further disqualifying. W&L Opp. at 10-11.

The inverse is true. Schroeder's diverse options transactions make him better-suited to represent the class of investors that broadly "purchased or otherwise acquired Net Power *securities*." Dkt. No. 1 (the complaint), ¶ 1. The class likely includes numerous options traders.[2] *See Grad v. Ironnet, Inc.*, 2022 WL 2789899, at *6 (E.D. Va. July 15, 2022) (appointing an options trader in part because "losses

---

[2] Data from Bloomberg shows at least 79,400 Net Power options contracts, including calls and puts, traded during the class period. A standard options contract represents 100 shares of stock.

sustained by other members of the putative class occurred in the same manner as the presumptive lead plaintiff's"); *In re Lyft Sec. Litig.*, 2020 WL 1043628, at \*6 (N.D. Cal. Mar. 4, 2020) ("[t]here likely are many class members" who traded similarly).

While Schroeder's options trading is somewhat sophisticated, "[c]ourts have rejected the argument that the use of sophisticated investment strategies disqualifies a party from serving as lead plaintiff." *Chauhan v. Intercept Pharms.*, 2021 WL 235890, at \*6 (S.D.N.Y. Jan. 25, 2021) (citation omitted, collecting cases). Regardless, like many class members, he purchased stock and warrants on the open market and held them, suffering substantial losses. *See* Dkt No. 8-3 at 2; *see also Sagall v. Savient Pharms., Inc.*, 2009 WL 10868742, at \*1 (S.D.N.Y. Mar. 12, 2009) (appointing a movant in part because "putting aside all options trading, [he] suffered losses of nearly $150,000 in common stock holdings alone").

Schroeder's options trading strategies are relatively common and widely used by investors. He sold put options and purchased call options during the class period, which are

8

bets that the company's stock price will rise. Schroeder also sold call options while holding the company's stock. This is known as a "covered call" investment strategy which is a well-known "options trading strategy designed to hedge against risk." *Intercept*, 2021 WL 235890, at *6 (explaining covered calls and appointing a movant that sold covered calls).

Schroeder also in some instances purchased put options to limit potential losses associated with other put options he sold. *See, e.g.*, Dkt. No. 8-3 at 21 (on December 13, 2023 Schroeder sold six 1/19/2024 $10 puts, and purchased six 1/19/2024 $7.50 puts).[3] Risk management strategies are not disqualifying. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2015 WL 1311073, at *7 (S.D.N.Y. Mar. 23, 2015) ("Investment strategies intended to mitigate risk do not render a movant atypical or inadequate.").

Importantly, Schroeder's overarching trading strategy with respect to all securities was "long," *i.e.* based on the premise that Net Power's value would rise over time, which is

---

[3] *See also* Investopedia, *Bull Put Spread: How (and Why) To Trade This Options Strategy*, available at https://www.investopedia.com/terms/b/bullputspread.asp (last visited June 30, 2025) (explaining Schroeder's strategy).

why when the company's stock price fell Schroeder suffered significant losses. *See Savient*, 2009 WL 10868742, at *1 (appointing movant in part because "[his] interests were fully aligned with the shareholder" as "he held a long position" and "suffered [losses] as a result").

Moreover, the authority Wenn and Luciani cite in support of disqualifying options traders is inapposite. *See* W&L Opp. at 11 (citing *Allergan* and *ProShares*). In *Allergan*, the class definition did not include options traders, and the court found that a movant for which "60% of his claimed losses came as a result of options trading" would not be "typical of the average **common stockholder**." *Cook v. Allergan PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (emphasis added). Here, the class definition includes options traders, and a much smaller percentage of Schroeder's loss is attributable to options trading. *See* Dkt No. 8-3 at 2. Accordingly, *Allergan* is inapposite.

Similarly, the court in *ProShares* disqualified a movant "whose losses **overwhelmingly** reflect his sale of put options" in part because the class was defined as those who purchased securities. *See Di Scala v. ProShares Ultra Bloomberg Crude*

10

*Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) (emphasis added). Here, however, a very small portion (less than 8%) of Schroeder's losses are attributable to selling put options, and the vast majority of his losses are attributable to purchasing other securities. *See* Dkt No. 8-3. As such, *ProShares* is inapposite. *See also Ironnet*, 2022 WL 2789899, at *5-*6 (distinguishing *ProShares* and *Allergan*).

For these reasons, Wenn and Luciani have failed to prove that Schroeder's options trading renders him inadequate, atypical, or subject to unique defenses.

### C. That Schroeder Was A Defendant In A Civil Lawsuit More Than 20 Years Ago Does Not Render Him Inadequate

None of the information Wenn and Luciani purport to have uncovered[4] about *Proton Energy* is disqualifying because "[m]ost courts have rejected the contention that a proposed representative is inadequate because of prior *unrelated* unsavory, unethical or even illegal conduct." *See Chupa v. Armstrong Flooring, Inc.*, 2020 WL 1032420, at *3-*4 (C.D. Cal. Mar. 2, 2020) (appointing a lead plaintiff who was formerly convicted of armed bank robbery); *see also In re:*

---

[4] Schroeder disclosed that he was a defendant in *Proton Energy*. *See* Dkt No. 7 at 12.

*Facebook Priv. Litig.*, 2016 WL 4585817, at *6 (N.D. Cal. Sept. 2, 2016) (a "single felony embezzlement conviction" did not disqualify class representative); *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007) ("[w]hether Monsky was in fact sanctioned by [the National Association of Securities Dealers]" does not "bear[] upon . . . his qualifications to represent the class"). The same result is warranted with respect to Schroeder—the fact that he was ***accused*** of fraud in *Proton Energy* is not disqualifying.

Notably, here, Schroeder was not charged or convicted of any crime, nor publicly sanctioned. *See Labelle v. Future FinTech Grp., Inc.*, 2024 WL 4275226, at *5 (D.N.J. Sept. 24, 2024) (reviewing the caselaw and finding that disqualification typically requires "proof that the presumptive lead plaintiff" is "subject of an active criminal investigation," "had been previously convicted of [specific types of] crime," or "had been publicly sanctioned for violating laws that implicate the individual's moral character").

Wenn and Luciani also cannot credibly claim that the allegations against Schroeder in the *Proton Energy* action

12

filed more than 20 years ago are related to the specific claims in this action. *See Gamboa v. KISS Nutraceuticals*, 2025 WL 1088066, at *9 (D. Colo. Apr. 2, 2025) (the conduct "must generally bear some relevance to the litigation, such as . . . inconsistent testimony on material issues in the litigation . . . .") (citation omitted); *Mejia v. DHL Express (USA), Inc.*, 2016 WL 9450680, at *10 (C.D. Cal. Feb. 25, 2016) (appointing a class representative whose prior bad acts were not "relevant to the conduct at issue in this case").

The fact that the *Proton Energy* case was filed more than 20 years ago further underscores its irrelevance to Schroeder's adequacy. *See Future FinTech*, 2024 WL 4275226, at *6 (appointing movant where the alleged bad acts "are twelve years old" and "concluded long before the class period in this case").

For these reasons, Wenn and Luciani have failed to prove that Schroeder is inadequate on the basis that he was a defendant in an unrelated civil case more than 20 years ago.[5]

---

[5] It should be noted that the central thrust of the *Proton Energy* case was that the underwriters (rather than the executives) concocted a scheme to enrich themselves. *See* Dkt. No. 15-4 at ¶ 2. While Wenn and Luciani claim the amount of the *Proton Energy* settlement is "not easily identifiable,"

13

### D. Schroeder Has Not Displayed A "Lack Of Candor" With Respect To His Ownership Of His Accounts

Wenn and Luciani also argue that Schroeder is inadequate because he has demonstrated a "lack of transparency and candor to the Court regarding . . . the true owners and beneficiaries of [his] accounts." W&L Opp. at 20. This attack also fails.

The PSLRA does not require that Schroeder identify (and Schroeder did not purport to identify) the "true owners" and "beneficiaries" of his accounts. *Id*. Instead, the PSLRA requires that Schroeder "set[] forth all of [his] transactions." 15 U.S.C. § 78u-4(a)(2)(A)(iv). Schroeder set forth all of his transactions in his certification. Schroeder executed (and had the authority to execute) every transaction he identified in all accounts.

Schroeder also correctly counted the losses in all accounts as accruing to *his* financial interest. With respect to the joint accounts, Schroeder "has an ownership interest in *all losses* flowing from those purchases." *Abadilla v. Precigen, Inc.*, 2021 WL 1312746, at *3 (N.D. Cal. Apr. 8,

---

W&L Opp. at 27, the order approving the consolidated settlement lists a "Total Designation" for Proton Energy of $558,096. *See* Dkt No. 15-5 at 27.

2021) (emphasis added) (rejecting argument that movant "improperly includes the losses of his wife" from a joint account); *In re Regions Morgan Keegan Closed-End Fund Litig.*, 2010 WL 5173851, at *11 (W.D. Tenn. Dec. 15, 2010) (similar); *Ng v. Berkeley Lights, Inc.*, 2022 WL 1659120, at *2 (N.D. Cal. May 25, 2022) (similar).

Schroeder, as trustee, also correctly claims all losses in connection with the trust account. Under Rule 17(a) of the Federal Rules of Civil Procedure, a trustee "may sue in their own name[]" and is "the real party in interest." Fed. R. Civ. P. 17(a)(1)(E); *see also Fraim v. Chilly Dil Consulting, Inc.*, 2022 WL 2916863, at *12 (M.D.N.C. July 25, 2022) (same). Trustees are routinely appointed as lead plaintiff, claiming losses in trust accounts. *See, e.g.*, *Intercept*, 2021 WL 235890, at *6-*7. Accordingly, Schroeder rightfully claimed all losses in the trust account as accruing to ***his*** financial interest.

Contrary to the claims of Wenn and Luciani (*see* W&L Opp. at 23), a trust is not a legal entity, cannot sue or be sued, and cannot hold title to property. *See Eslava v. Gulf Tel. Co., Inc.*, 2006 WL 8437737, at *3 (S.D. Ala. Jan. 30, 2006)

15

("A trust generally is not recognized as a separate legal entity with the capacity to sue or be sued in its own name."); *Hinson for Broughton v. Citibank, N.A.*, 2017 WL 6375376, at *4 (E.D.N.C. Dec. 13, 2017) (a trust cannot "borrow money or hold title").

Moreover, while Wenn and Luciani urge the Court to adopt the inference that Schroeder was nefariously trying to hide his joint and trust accounts, they do not explain what Schroeder was supposedly trying to gain by hiding them. In fact, there is nothing to gain, as Schroeder can claim the full financial interest in all accounts, and their existence does not generate any unique defenses against Schroeder. Moreover, when Wenn and Luciani requested additional information regarding the accounts, Schroeder transparently provided it, even while maintaining he was not required to do so. *See* Dkt. No. 15-3. Schroeder also filed a revised certification in an abundance of caution. Dkt. No. 14-1. Schroeder is not hiding anything and Wenn and Luciani's insistence to the contrary is unfounded.

\*     \*     \*

16

For these reasons, Wenn and Luciani have failed to rebut the presumption that Schroeder is the most adequate plaintiff to be appointed as lead plaintiff.

## IV. CONCLUSION

Schroeder requests that the Court appoint him as lead plaintiff, approve his selection of Glancy Prongay Wolke & Rotter LLP[6] as lead counsel, and deny the competing motion.

Respectfully submitted,

Dated: March 13, 2026

*/s/  Garth Spencer*

**GLANCY PRONGAY WOLKE & ROTTER LLP**

Charles H. Linehan*
   CLinehan@glancylaw.com
Garth Spencer (NCSB# 60142)
   GSpencer@glancylaw.com
1925 Century Park East, Ste. 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Walter Schroeder and Proposed Lead Counsel for the Class*

* LR 83.1(d) notice of special appearance filed June 20, 2025

---

[6] *See* Notice of Firm Name Change, Dkt. No. 26.

17

## CERTIFICATION OF WORD COUNT

I hereby certify that this brief complies with the Local Civil Rule 7.3(d) on the limitations on the length of briefs. The body of the brief, headings, and footnotes of this brief contains 3,124 words.

*/s/ Garth Spencer*
Garth Spencer

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2026, I served the foregoing document on all counsel of record via the CM/ECF system.

*/s/ Garth Spencer*
Garth Spencer