IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TED LUCIANI, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:25-cv-296 |
| NET POWER INC., DANIEL J. RICE IV, AKASH PATEL, and BRIAN ALLEN, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Lindsey A. Freeman, United States District Judge.

Before the Court are motions for the appointment of lead plaintiff and lead counsel in this putative securities class action involving allegations that Defendants Net Power, Inc., Daniel Rice IV, Akash Patel, and Brian Allen (collectively, "Net Power") defrauded investors in violation of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Dkt. 1 ¶ 1; *see also* Dkts. 4, 6. The proposed class consists of all persons and entities that purchased or otherwise acquired Net Power securities between June 9, 2023, and March 7, 2025 (the "Class Period"). Dkt. 1 ¶ 1. Plaintiff Ted Luciani ("Plaintiff") alleges that Defendants made false and misleading statements regarding the Company's business projections and financials, which ultimately resulted in a decline in

the Company's stock price and financial harm to himself and other class members. *See id.* ¶¶ 7, 14.

David A. Wenn and Ted Luciani (together, "Wenn and Luciani") and Walter Schroeder ("Schroeder") have each filed competing motions to be appointed lead plaintiffs in this lawsuit. *See* Dkts. 4, 6. For the reasons set forth below, Schroeder is appointed lead plaintiff, and Glancy Prongay Wolke & Rotter LLP ("Glancy Prongay") is appointed lead counsel.

## FACTS AND PROCEDURAL HISTORY

Net Power is a publicly traded company on the New York Stock Exchange ("NYSE") that focuses on clean energy technology. Dkt. 1 ¶¶ 2, 85. Through its "Net Power Cycle" technology, Net Power uses natural gas to generate electricity while capturing nearly all the atmospheric emissions. *Id.* ¶ 2. Net Power is currently developing the first utility-scale plant that will use Net Power Cycle technology in the Permian Basin of West Texas ("Project Permian"). *Id.* ¶ 4.

In 2023, Defendants initially represented that Project Permian would be operational in 2026 and cost $950 million. *Id.* ¶¶ 5, 37. Net Power later announced that it was unlikely to complete Project Permian on schedule and that supply chain issues and other challenges were pushing project costs up. *Id.* ¶ 7. On November 14, 2023, Net Power's stock fell 18.54% after it filed a 10-Q stating that Project Permian would now be operational between the second half of 2027 and the first half of 2028. *Id.* ¶¶ 9, 49. In

2

2024, Net Power revised Project Permian's cost estimate again to $1.1 billion. *Id.* ¶ 5. On March 10, 2025, Net Power issued another press release stating Project Permian would be completed "no earlier than 2029" and would now cost between $1.7-2 billion. *Id.* ¶ 10. In response, its stock price dropped 31.46%. *Id.* at ¶ 11.

Plaintiff filed a putative class complaint on April 18, 2025, alleging Defendants violated Sections 10(b) and 20(a) of the Securities and Exchange Act by making materially false and misleading statements. *Id.* ¶ 75. Plaintiff alleges, *inter alia*, that Defendants used boilerplate language in their 10-Ks and 10-Qs that failed to disclose the material risks and capital needs for Project Permian. *Id.* As a result, Plaintiff claims Defendants' financial forecasts were unreliable. *Id.* Plaintiff concludes that Defendants were aware of their omissions and, given Project Permian's influence on the stock price, had the motive and opportunity to defraud investors. *See id.* ¶¶ 82-83.

On June 17, 2025, Wenn and Luciani moved to be appointed co-lead plaintiffs, Dkt. 4, and Schroeder filed a competing motion, Dkt. 6. On June 24, 2025, Schroeder submitted a revised certification, moving on behalf of himself and as trustee of the Jennifer Hansmann Schroeder Irrevocable Trust. Dkt. 14-1. On June 24, 2025, both movants filed briefs opposing one another's appointment. Dkts. 13, 15. After the Court granted the parties' motions for leave, reply briefs were filed on March 13, 2026. Dkts. 27, 29.

ANALYSIS

The PSLRA directs the Court to appoint the lead plaintiff(s) that is most capable of adequately representing the interests of the class members and who meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).  Here, both Schroeder and Wenn and Luciani have shown that their claims are typical of the class and that they can adequately protect the class's interests, but Schroeder has incurred the largest financial losses from Defendants' alleged misstatements and omissions, making him the presumptive lead plaintiff.  *See Carpenter v. Oscar Health, Inc.*, 631 F. Supp. 3d 157, 161 (S.D.N.Y. 2022).  Wenn and Luciani have failed to rebut Schroeder's presumptive lead plaintiff status because they have not shown that Schroeder does not meet the Rule 23 requirements, is subject to a unique defense, or should otherwise be disqualified from serving as lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Accordingly, the Court finds that Schroeder is most capable of representing the interests of the putative class.

**I.    Plaintiff Gave Proper Notice to the Class and Movants' Motions for Lead Plaintiff are Timely.**

Under the PSLRA, a plaintiff who files a securities class action must publish a notice in a widely circulated national business-oriented publication or wire service informing would-be class members: (1) of the action, the asserted claims, and the class period, and (2) that any class member may move to serve as lead plaintiff within 60 days of publication.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

4

Counsel for Plaintiff, Pomerantz LLP ("Pomerantz"), announced the class action filing in *ACCESS Newswire* the same day Plaintiff filed the complaint. *See* Dkts. 2, 5-2; *see also Spurbeck v. Petco Health & Wellness Co., Inc.*, No. 25-cv-1667, 2025 WL 3251605, at *2 (S.D. Cal. Nov. 20, 2025) (finding a publication in *Access Newswire* meets the circulation requirement). The notice informed readers that the class consists of all persons who acquired Net Power securities between June 9, 2023, and March 7, 2025. *See* Dkt. 5-2 at 2. The notice explained that Net Power violated Sections 10(b) and 20(a) of the Exchange Act when it made false and misleading statements about Project Permian. *Id.* at 3. It advised all class members seeking to serve as lead plaintiff to move the Court by June 17, 2025, which was within 60 days of the notice's publication. *Id.* at 1. Each movant filed before the deadline. *See* Dkts. 4, 6. Thus the Court finds that the Pomerantz notice meets the PSLRA's requirements, and the movants' applications are timely.[1]

## II. Schroeder is the Presumptive Lead Plaintiff.

The PSLRA directs the Court to appoint the lead plaintiff(s) that is "most capable of adequately representing the interests of class members." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the movant who "has the largest financial interest in the relief sought by the

---

[1] The PSLRA directs the Court to review applications and appoint a lead plaintiff within 90 days of the class action announcement. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). More than 90 days have passed because the case was recently assigned to a different judge.

Case 1:25-cv-00296-LAF-JGM   Document 30   Filed 04/23/26   Page 5 of 19

class" and meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).  As explained below, Schroeder meets both parts of this test and thus is the presumptive lead plaintiff.

### A.    Schroeder has the largest financial interest.

Courts have adopted a four-factor test to identify the party with the largest financial interests: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs."  *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) (internal quotations omitted).  Courts typically focus on the fourth factor.  *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) ("Financial loss, the last factor, is the most important element of the test."); *Rodriguez v. DraftKings Inc.*, No. 21-cv-5739, 2021 WL 5282006, at *4 (S.D.N.Y. Nov. 12, 2021) (same).

Here, Schroeder claims a loss of $279,357, and Wenn and Luciani claim a loss of $64,581.[2]  Dkt. 5 at 2; Dkt. 7 at 9.  Wenn and Luciani allege that Schroeder inflated his losses because he included three accounts jointly owned by his wife, and a fourth account

---

[2] Both parties used the "last-in, first-out" ("LIFO") accounting method to calculate their financial losses.  *See* Dkt. 13 at 2; *see also Cha v. Kinross Gold Grp.*, No. 12-cv-1203, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("[T]he overwhelming trend ... nationwide has been to use LIFO to calculate such losses.")  LIFO calculates investor losses by assuming the most recent stock purchases are the first ones sold.  *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011).

held in the name of a trust.[3] *See* Dkt. 15 at 22-23. Wenn and Luciani rely on *Bhojwani v. Pistiolis*, in which the Magistrate Judge recommended the district court deny a movant's attempt to aggregate his family members' losses. *See* No. 06-cv-13761, 2007 WL 2197836, at \*5 (S.D.N.Y. June 26, 2007). It seems Wenn and Luciani did not realize the district court *rejected and overruled* that part of the recommendation. *See Bhojwani v. Pistiolis*, No. 06-cv-13761, 2007 WL 9228588, at \*2-3 (S.D.N.Y. July 31, 2007). Further, the Magistrate Judge relied on the belief that the movant's family members invested independently and suffered independent losses, *see Bhojwani*, 2007 WL 2197836, at \*5, while Schroeder executed every transaction in the joint accounts and the losses accrued against his personal financial interests, *see* Dkt. 29 at 14. Thus, even if this Court applied the Magistrate's reasoning, the Court sees no reason to exclude the joint account losses from the total loss. *See Abadilla v. Precigen, Inc.*, No. 20-cv-06936, 2021 WL 1312746, at \*3 (N.D. Cal. Apr. 8, 2021) (finding that the losses in a joint account shared by the movant and his wife do not constitute independent losses).

The Court agrees that lead plaintiff movants should not include losses incurred in a trust account when they are not moving the Court in their capacity as trustee.[4]

---

[3] The Court has no reason to believe the losses that Schroeder reported are inaccurate, or at least so inaccurate that Schroeder's financial stake is lower than Wenn's. *See* Dkt. 8-3 at 2.

[4] "A, as trustee, and A, as an individual outside the trusteeship, constitute two separate legal persons." Amy Morris Hess, et al., *Bogert's Trusts and Trustees* § 17 (2025). Although Rule 17(a) of the Federal Rules of Civil Procedure allows a trustee to sue in their own

Schroeder originally moved for lead plaintiff solely in his individual capacity. *See* Dkt. 8-2. However, Schroeder has since submitted a revised certification stating that he moves on behalf of himself and as Trustee of the Jennifer Hansmann Schroeder Irrevocable Trust, so including the trust losses is appropriate. *See* Dkt. 14-1. Regardless, the Court observes that even if the trust losses were not included, Schoeder's losses would still exceed the purported losses of Wenn and Luciani. Indeed, Schroeder's losses independent of the trust are still roughly four times greater than those of Wenn and Luciani.[5] *See* Dkt. 8-3 at 2. Schroeder has thus demonstrated he has the largest financial interest in this action.

**B.     Schroeder meets the typicality and adequacy requirements of Rule 23.**

A movant seeking to be appointed lead plaintiff must also make a *prima facie* showing that it can meet the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001).

---

name, "it does not say that the trustee may sue in his or her own name both in an individual and a representative capacity." *See Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 866 (N.D. Cal. 2015). Schroeder cites *Chauhan v. Intercept Pharms.*, No. 21-cv-00036, 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021), to argue that courts routinely appoint trustees as lead plaintiff. *See* Dkt. 29 at 15. But in *Chauhan*, the lead plaintiff moved in their trustee capacity. *See Chauhan*, 2021 WL 235890, at *4, *7.

[5] According to the trade sheet, Schroeder's total losses are $279,357, and the trust losses are $21,339. *See* Dkt. 8-3 at 2. Excluding the trust losses, the new total losses are $258,018 ($279,357 - $21,339).

Schroeder's claims are typical of the putative class.  Typicality is met when the lead plaintiff's claims arise from the same course of events and are the same as the claims of the class.  *See* Fed. R. Civ. P. 23(a)(3).  Courts have reached different conclusions about whether movant's options[6] trading renders them atypical of the class.  *See, e.g., Cook v. Allergan PLC*, No. 18-cv-12089, 2019 WL 1510894, *2 (S.D.N.Y. Mar. 21, 2019) (denying a movant where more than 60% of their losses arose from purchasing calls and puts); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011) (finding a movant that trades both common stock and options is typical of the class); *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761, 2009 WL 1321167, *2 (S.D.N.Y. May 11, 2009) (holding that a movant that traded exclusively in call options is an atypical and inadequate plaintiff).  Courts scrutinize these trades because, in some instances, appointing an options trader as the lead plaintiff can "introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates ... causing unnecessary conflict." *See Cook*, 2019 WL 1510894, at *2 (quoting *Elan Corp.*, 2009 WL 1321167, *2).

Schroeder traded in both common stock and options.  However, his options-related losses are a relatively small portion of his total losses—approximately $47,450, or roughly 17%. *See* Dkt. 8-3 at 2.  Moreover, according to the Complaint, the putative class is defined as those who traded in securities—*i.e.*, common stock, options, and other

---

[6] An options contract gives the buyer the right, but not the obligation, to buy or sell an asset, such as a stock, at a set price.

derivatives—like Schroeder. *See* Dkt. 1 ¶ 5. Schroeder also affirms that he reviewed and relied on Defendants' misstatements and omissions about Project Permian when trading Net Power securities during the Class Period. *See* Dkt. 7 at 11. And, like the class, Schroeder alleges that he suffered financial harm because of Net Power's alleged misstatements and omissions. *See id*. Accordingly, the Court finds that Schroeder is typical of the putative class. *See Goldstein*, 827 F. Supp. 2d at 355.

Rule 23 also requires that the lead plaintiff will "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). Schroeder has certified that he understands his duties, including the duty to fairly and adequately represent the class to the best of his abilities. *See* Dkt. 8-2. Schroeder has a sound understanding of the economic principles underlying this lawsuit: Schroeder attended MIT Sloan School of Management, spent more than 30 years investing, and retired from a career in energy and finance. Dkt. 7 at 12. Schroeder's interest in this litigation appears aligned with the proposed class. Thus, the Court is satisfied that Schroeder meets Rule 23's adequacy requirements. Having shown he has the largest financial interest and met the Rule 23 requirements, Schroeder is the presumptive lead plaintiff.

### III. Wenn and Luciani Have Not Rebutted Schroeder's Presumptive Lead Plaintiff Status.

Schroeder is the presumptive lead plaintiff and, for the reasons articulated below, Wenn and Luciani are unable to rebut that presumption. Wenn and Luciani have not shown that Schroeder is subject to unique defenses that undermine his ability to

10

adequately represent the class. They also have not shown that Schroeder will be unable to meet the Rule 23 requirements, either because his claims are atypical or because he would be inadequate.

> **A.** **Wenn and Luciani have not shown that Schroeder is subject to unique defenses.**

A competing movant can rebut a plaintiff's presumptive lead status by showing that they are "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Wenn and Luciani allege Schroeder is a "short-selling, high-frequency day trader," and as such his interests do not align with the proposed class and make him vulnerable to unique defenses. Dkt. 15 at 15. Schroeder made 1,211 trades, including 804 options trades, during the Class Period. *Id.* at 5-6. Wenn and Luciani argue these trades are proof that Schroeder traded based on short-term price movements and volatility, rather than on Defendants' alleged misrepresentations.[7] *Id*. at 9. If so, Schroeder's appointment could

---

[7] Wenn and Luciani argue Schroeder's trading frequency makes him atypical, inadequate, and subject to unique defenses. For purposes of selecting a lead plaintiff in a securities class action, some courts analyze frequency under Rule 23's typicality and adequacy prongs. But it is more appropriate to consider it under the umbrella of unique defenses. Trading frequency creates a question of whether the movant was relying on market volatility, or on an accurate market price. If a movant relied on market volatility, they would be subject to a unique defense—that they were not trading on the alleged misstatements and omissions by the Defendant like the rest of the putative class. Courts ruling on class certification have held that unique defenses bear on both the typicality and adequacy of a class representative. *See Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (collecting cases). But since the PSLRA explicitly directs courts to consider unique defenses separately from the requirements of Rule 23, *see* 15 U.S.C. § 78u-

11

lead Defendants to raise unique defenses that would unnecessarily complicate or stall the litigation. *See DraftKings Inc.*, 2021 WL 5282006, at *9-10.

Schroeder responds that he is not a day trader and that his trades were not made with the goal of profiting from short-term price movements. *See* Dkt. 29 at 5. Schroeder notes in the nine instances in which he bought and sold shares on the same day, all were the result of options-closing transactions.[8] *Id*. at 3-4. Moreover, while the sheer volume of Schroeder's trades could give the impression of day trading, courts have held that day trading is not in itself sufficient to rebut a movant's presumptive lead plaintiff status. *See, e.g., Schueneman v. Arena Pharms.*, Inc., No. 10-cv-1959, 2011 WL 3475380, at *7 (S.D. Cal. Aug. 8, 2011) ("Plaintiff's status as a purported 'day trader' is not enough in and of itself to rebut the presumption of adequacy." (quotation modified)); *Prefontaine v. Rsch. in Motion Ltd.*, No. 11-cv-4068, 2012 WL 104770, at *4 (S.D.N.Y. Jan. 5, 2012)(characterizing a movant as a day trader does not prove they are subject to a unique defense); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 415 (S.D.N.Y. 2004) (finding allegations of in-and-out trading to be insufficient to rebut presumptive lead plaintiff status).

---

4(a)(3)(B)(iii), it is redundant to also consider it under Rule 23's typicality and adequacy analysis for purposes of appointing a lead plaintiff in a securities class action.

[8] For example, on January 22, 2024, Schroeder purchased 500 shares at $10 per share because a put option he sold was exercised. *See* Dkt. 29 at 4. He sold those shares the same day at $8.79, realizing the loss on the options contract. *Id.*

12

In addition, having reviewed the evidence, the Court is not convinced that Schroeder is a day trader. Schroeder states that his options trades were part of a larger risk-mitigation strategy, which included covered calls.[9] *See* Dkt. 29 at 9. Schroeder claims that his puts were likewise part of his risk-hedging strategy. *Id.* at 9. The trade sheets appear to support this claim.[10] Schroeder seems to have used a sophisticated trading strategy that staggered common stock purchases throughout the Class Period, while simultaneously intermittently trading options. *See generally* Dkt. 8-2. This is a long strategy that ultimately bets on the stock price going up. *See* Dkt. 29 at 9. Wenn and Luciani have not produced any evidence beyond Schroeder's trading patterns to allege that Schroeder was not trading based on the integrity of the market price. *Cf. Okaro v. Icahn Enters. L.P.*, 702 F. Supp. 3d 1296, 1302-03 (S.D. Fla. 2023) ("The other Movants have not offered any specific showing as to how the frequency of Kosowsky's trading proves he did not rely on Defendants' alleged misrepresentations—as such, the unique defense

---

[9] Covered calls can act as a hedge on long positions. A shareholder can sell a call option against his shares and collect the premium paid by the call option purchaser. This premium helps protect against short-term dips in the stock price. But the covered call limits a shareholder's upside. If the stock price rises above the strike price, the shareholder must sell the stock at less than the market value.

[10] Schroder said "some," not all, of his put purchases were part of his put strategy to limit risk. *See* Dkt. 29 at 9. It is not clear from Schroder's trade sheet whether some of his puts were meant to profit from a decrease in the stock price. However, it appears that if that were the case, it would have been a small portion of his trades. *See generally* Dkt. 14-1.

13

arguments are 'mere speculation.'" (quotation modified)).  Thus, the Court sees no reason to believe at this stage that Schroeder is subject to unique defenses.

> **B.** **Wenn and Luciani fail to demonstrate that Schroeder cannot meet the Rule 23 requirements.**

For the reasons noted above, *see supra* Section II.B., Schroeder has met the PSLRA's Rule 23 requirements for typicality and adequacy.  None of the arguments raised by Wenn and Luciani suggest otherwise.

Although Wenn and Luciani argue that Schroeder's trading strategy makes him atypical of the putative class members, *see* Dkt. 27 at 15, that is simply not true.  As noted above, the Complaint defines the Class as all persons "that purchased or otherwise acquired Net Power *securities* between June 9, 2023 and March 7, 2025[.]" (emphasis added). Dkt. 1 at ¶ 5. Options and warrants are both securities. *See* 15 U.S.C. § 78c(a)(10). And, given the market for these securities, certainly some class members also traded in these financial products.  The Court sees no reason to conclude Schroeder is atypical solely because of his wide breadth of trading.  It follows that a class made up of an amalgamation of traders could benefit from representation by a lead plaintiff who traded in various financial instruments.

Wenn and Luciani also have not shown that Schroeder cannot adequately represent the class.  Wenn and Luciani first challenge Schroeder's adequacy by arguing a lack of transparency and candor when Schroeder included the three accounts he jointly owns with his wife and the trust account in his total loss calculations but failed to identify

14

them as such in his original disclosures. *See* Dkt. 15 at 20-23. Such alleged dishonesty, they claim, demonstrates Schroeder cannot adequately represent the class. *See* Dkt. 27 at 10. As discussed earlier, Schroeder may aggregate the losses from the joint accounts, so his original disclosures on that point raise no concerns. *See supra* Section II.A. Schroeder also filed an Amended Certification and has not made any attempt to hide the ownership status of the trust account. *See* Dkt. 14-1. Moreover, as noted above, Schroeder's losses, even excluding the trust account, are still roughly four times greater than those of Wenn and Luciani. *See supra* note 5. So, there is no reason to believe Schroeder's decision to originally include the trust account losses, prior to his amended certification, was an attempt to deceive the Court. *See Scheller v. Nutanix, Inc.*, No. 19-cv-01651, 2021 WL 2410832, at *6 n.6 (N.D. Cal. June 10, 2021) (concluding that the errors in the PSLRA certification were not made in bad faith and thus did not render the movant atypical or inadequate) (citing *Schueneman*, 2011 WL 3475380, at *6). Accordingly, Schroeder's decision to originally include the trust losses without moving in his trustee capacity does not create concerns about his candor or adequacy sufficient to rebut his presumptive lead plaintiff status.

Schroeder's litigation history also does not disqualify him from serving as lead plaintiff. Wenn and Luciani point to a nearly 20-year-old civil case in which Schroeder was a named defendant, arguing it casts doubt on his adequacy to serve as lead plaintiff.

15

*See* Dkt. 15 at 24-28; Dkt. 29 at 13. According to the parties, that case was settled and did not result in any criminal conviction. *See* Dkt. 15 at 27-28; Dkt. 29 at 12.

The law is "conclusively inconclusive" on when a movant's prior conduct, credibility, or integrity undermines their Rule 23 adequacy. *See Labelle v. Future FinTech Grp., Inc.*, No.-cv-24-247, 2024 WL 4275226 (D.N.J. Sept. 24, 2024) (internal quotation omitted). *See also, e.g.*, *In re Network Assoc. Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (lead plaintiff not adequate due to active criminal investigation of fraud); *Sneed v. Acelrx Pharm.*, No. 21-cv-04353, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021) (proposed lead plaintiff deemed inadequate due to past conviction for embezzlement); *Chupa v. Armstrong Flooring, Inc.*, No. 2:19-cv-09840, 2020 WL 1032420, at *4 (C.D. Cal. Mar. 3, 2020) (plaintiff's past involvement in armed bank robbery conviction did not rebut presumption that he was adequate); *Rambarran v. Dynamic Airways, LLC*, No. 14-cv-10138, 2015 WL 4523222, at *9 (S.D.N.Y. 2015) (proposed lead plaintiff deemed inadequate when he was a former disbarred attorney with felony criminal conviction); *McCall v. Drive Fin. Servs. LP*, 236 F.R.D. 246, 251 (E.D. Pa. 2006) (lead plaintiff found to be adequate despite conviction for armed robbery); *Xianglin Shi v. Sina Corp.*, No. 05-cv-2154, 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005) (criminal conviction for financial fraud sufficient to rebut lead plaintiff presumption); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) (presumptive lead plaintiff found to be inadequate because he had been "publicly cited as violating SEC and NASD rules in two instances.").

16

District courts have taken divergent approaches and reached differing conclusions, but, in aggregate, the case law makes clear that a movant for lead plaintiff generally should only be disqualified when the movant is either: (1) under active criminal or civil investigation for relevant wrongful conduct; or (2) has been convicted of, or has otherwise proven to have committed, a relevant bad act. An allegation of wrongdoing, without more, is insufficient.

Approximately 20 years ago, Schroeder was a defendant in a prior securities class action involving Proton Energy Systems, Inc. ("Proton") for his participation in the road show process preceding Proton's IPO. *See generally Marino v. Proton Energy Sys., Inc.*, No. 01-cv-06082 (S.D.N.Y. July 3, 2001); *see also* Dkt. 15 at 27. Plaintiffs in that action alleged, *inter alia*, that Schroeder "knew of or recklessly disregarded" the underwriters' attempts to create artificial demand for the IPO. *Id*. After approximately eight years of litigation, the case settled. *Id*. Schroeder disclosed *Marino* in a footnote in his lead plaintiff memorandum. *See* Dkt. 7 at 12 n.1. Wenn and Luciani argue that Schroeder's disclosure was insufficient and that the nature of the lawsuit was disqualifying. *See* Dkt. 15 at 28. The Court disagrees. "It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). Disqualifying movants because they previously settled a dispute would be inappropriate. Schroeder was neither found guilty of any bad act nor publicly sanctioned. *See* Dkt. 29 at 12; *see also Labelle*, 2024 WL 4275226, at *5-6. The Court should not assume he engaged in wrongful conduct based on

17

mere allegations and a private settlement.  Further, using a footnote to acknowledge a prior lawsuit is not proof of a lack of candor nor is it a reason to disqualify a lead plaintiff.

**IV.     Glancy Prongay is Appointed Lead Counsel.**

Under the PSLRA, once the court has appointed a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u–4(a) (3)(B)(v).  If the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.  *See Cohen v. U.S. Dist. Court*, 586 F.3d 703, 712 (9th Cir.2009).

Schroeder asks the Court to approve Glancy Prongay as lead counsel.  *See* Dkt. 8-4.[11]  Glancy Prongay has decades of experience prosecuting securities class action cases in both federal and state courts.  *See id.*  The firm's attorneys have successfully litigated securities class actions through all stages, including arbitration and trial.  *See id*.  It seems likely Glancy Prongay will zealously and effectively advocate for the putative class.  Therefore, the Court approves Schroeder's choice of counsel and appoints Glancy Prongay as lead counsel.

---

[11] Proposed lead counsel recently changed its name from Glancy Prongay & Murray LLP to Glancy Prongay Wolke & Rotter LLP.  *See* Dkt. 26.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby **GRANTS** movant Schroeder's motion to appoint lead plaintiff and lead counsel and **DENIES** movants Wenn and Luciani's motion to appoint lead plaintiff and lead counsel.

IT IS SO ORDERED.

This the 23rd day of April, 2026.

_____
LINDSEY A. FREEMAN
UNITED STATES DISTRICT JUDGE

19